UNITED STATES BANKRUPTCY COURT
MIDDLE DISTRICT OF GEORGIA
MACON DIVISION

In the Matter of:                  :    Chapter 7
                                   :
CUA AUTOFINDER, LLC, a/k/a         :
CREDIT UNION AUTOFINDERS,          :
                                   :
          Debtor              :    Case No. 05-50480 RFH
                                   :
MIRZA AHMED,                       :
                                   :
          Movant              :
                                   :
        v.                      :
                                   :
CUA AUTOFINDER, LLC, a/k/a         :
CREDIT UNION AUTOFINDERS,          :
                                   :
          Respondent          :

BEFORE

ROBERT F. HERSHNER, JR.
UNITED STATES BANKRUPTCY JUDGE

COUNSEL:

For Movant:                        Thomas C. James, III
                                   Walter E. Jones
                                   231 Riverside Drive, Suite 100
                                   Post Office Box 4283
                                   Macon, Georgia 31208-4283

For the Chapter 7 Trustee:         Danny L. Akin
                                   P.O. Box 1773
                                   Macon, Georgia 31202

For Steven Strickland:             Ted W. Hight III
                                   Patrick O'Brien
                                   40 Technology Parkway South, Suite 300
                                   Norcross, Georgia 30092

MEMORANDUM OPINION

Mirza Ahmed, Movant, filed with the Court on January 22, 2008, his Motion Of Mirza Ahmed To Determine Entitlement To Escrow Funds. Joy R. Webster, Chapter 7 Trustee ("Trustee"), filed a response on February 4, 2008. Steven Strickland ("Mr. Strickland"), filed a response on February 5, 2008. CUA Autofinder, LLC, a/k/a Credit Union Autofinders, the named Respondent in Movant's motion, is the Debtor in this Chapter 7 bankruptcy case (hereafter "Debtor"). Movant's motion came on for a hearing on February 12, 2008. The Court, having considered the motion, the responses, the evidence presented, and the arguments of counsel, now publishes this memorandum opinion.

Mr. Strickland is the sole shareholder of C.U.A., Inc., a Georgia corporation. C.U.A., Inc. owned and operated a motor vehicle dealer and brokerage business (hereafter "motor vehicle business"). Mr. Strickland agreed to sell substantially all the assets of C.U.A., Inc. to Movant. This was a sale of C.U.A., Inc.'s assets and not a sale of Mr. Strickland's shares of stock in C.U.A., Inc. Movant formed the Debtor which is a Georgia limited liability company. Movant is the sole member of Debtor.[1] The primary purpose of Debtor was to acquire the assets of C.U.A., Inc. and to operate the motor vehicle business.

---

[1] The owners of a limited liability company are known as members. O.C. G. A. § 14-11-101(16) (2003).

To facilitate the sale, the parties executed five documents on or around December 19, 2003 (collectively the "closing documents"). The closing documents state that they are to be construed in accordance with Georgia law. Movant and Mr. Strickland were represented by counsel. Movant testified that he executed the closing documents in Macon, Georgia, and that Mr. Strickland executed the documents in Atlanta.

An Asset Purchase Agreement dated December 19, 2003, was executed by Movant as an individual, and by Mr. Strickland as an individual, as president of C.U.A., Inc., and as president of Debtor. In the purchase agreement, C.U.A., Inc. is referred to as the "Seller," and Debtor is referred to as the "Purchaser." The purchase agreement states that C.U.A., Inc. was to sell substantially all its assets to Debtor for the purchase price of $1,700,000, plus a certain "tax differential."[2] Debtor was to pay $650,000 in cash at closing. The balance of the purchase price, $1,050,000, was to be paid through a promissory note executed by Debtor in favor of C.U.A., Inc. Debtor was to deliver $50,000 to an Escrow Agent be held in escrow to pay the "tax differential." The $50,000 escrow is the maximum amount of the "tax differential" for which Debtor was obligated. Debtor had no funds to meet its obligations. Movant issued a personal check for $650,000 to meet Debtor's obligation for cash at closing[3]

---

[2] The "tax differential" represented some or all of Mr. Strickland's and C.U.A., Inc.'s income tax obligations arising from the sale.

[3] It is unclear whether Movant's check went directly to C.U.A., Inc. or whether Movant issued his check to Debtor which in turn paid C.U.A., Inc.

3

under the Asset Purchase Agreement.

Movant, on behalf of Debtor, executed a Promissory Note dated December 19, 2003, in favor of Mr. Strickland[4] for the balance of the purchase price. The principal amount of this obligation was $1,050,000. Debtor was to pay $500,000 plus interest on July 1, 2004, and $550,000 plus interest on January 1, 2005.

Mr. Strickland and Debtor executed an Independent Contractor Agreement.[5] Mr. Strickland was to serve as a consultant to help Debtor operate the motor vehicle business that was being purchased from C.U.A., Inc.

Mr. Strickland, as an individual, as president of C.U.A., Inc., and as president of Debtor, executed an Escrow Agreement dated "December___, 2003." Debtor was to deliver $50,000 to an escrow agent. After Mr. Strickland and C.U.A., Inc. completed their 2003 income tax returns, they were to furnish a copy of the tax returns to Debtor along with a calculation of the "tax differential." If Debtor did not assert an objection to the calculation, the escrow agent was to pay the escrow funds in "the amount due to [Mr. Strickland and C.U.A., Inc.] for such difference in taxes [the "tax differential"]." Any escrow funds in excess of the amount due Mr. Strickland and C.U.A., Inc. were to be returned to Debtor. Section 1 of the Escrow Agreement states

---

[4] The Asset Purchase Agreement states that Debtor would execute a Promissory Note in favor of C.U.A., Inc. However, the Promissory Note is payable in favor of Mr. Strickland.

[5] The Independent Contractor Agreement was not admitted into evidence. Movant executed a personal guarantee dated December 19, 2003, which states that the Independent Contractor Agreement is "dated as of the date hereof."

4

in part that the "Escrow Agent shall hold the Escrowed Funds in its trust account until no later than October 15, 2004. Any funds not paid out by October 15, 2004, shall be returned to Buyer [Debtor]." Debtor had no funds to meet its obligation under the Escrow Agreement. Movant issued a personal check for $50,000 to the escrow agent to meet Debtor's obligation.

Movant executed an Unconditional Guaranty Of Payment And Performance (hereafter "personal guaranty") dated December 19, 2003, in favor of Mr. Strickland and C.U.A., Inc. Under section 1, Movant personally guaranteed Debtor's obligations under the Independent Contractor Agreement and the Promissory Note, "collectively referred to as the 'Obligations.'" Section 7 of the personal guaranty states in part that Movant irrevocably waives and releases Debtor from all claims to which Movant may have by virtue of the guarantee of the "Obligations" or payment or performance of Movant's obligations hereunder including any right of subrogation, reimbursement, or other similar right.[6]

---

[6] Section 7 of the Movant's personal guaranty provides in part:
> The Guarantor [Movant] hereby <u>irrevocably waives</u> and releases CUAA [Debtor] from all "claims" (as defined in Section 101(4) of the United States Bankruptcy Code) to which the Guarantor [Movant] is or would be entitled by virtue of the guarantee of the Obligations [the Independent Contractor Agreement and Promissory Note] or payment or the performance of the Guarantor's [Movant's] obligations hereunder, including, without limitation, any right of <u>subrogation</u> (whether contractual, under Section 509 of the United States Bankruptcy Code or otherwise), reimbursement, contribution, exoneration or other similar right, or indemnity, or any right of recourse to security for any of the Obligations or under the

After the sale closed, Debtor began operation of the motor vehicle business. Mr. Strickland served as a consultant to Debtor. Debtor's first payment under the Promissory Note in the amount of $500,000 was due on July 1, 2004. Debtor did not have sufficient funds to make the full payment. Movant issued a personal check for $250,000 to Debtor. Debtor then paid $500,000 to Mr. Strickland.

Unfortunately Debtor's motor vehicle business was not successful. Movant and Mr. Strickland hotly dispute the cause of the problems. That dispute is the subject of litigation pending in state court.

Debtor's final payment of $550,000 plus interest under the Promissory Note was due on January 1, 2005. This final payment has not been made.

Debtor filed a petition under Chapter 11 of the Bankruptcy Code on February 4, 2005. The Court entered an order on November 30, 2005, converting the Chapter 11 case to a case under Chapter 7 of the Bankruptcy Code. The Office of the United States Trustee appointed Joy R. Webster, Trustee, to be the Chapter 7 trustee of Debtor's bankruptcy estate.

Mr. Strickland and C.U.A., Inc. have not completed their 2003 income tax returns or provided a calculation of the "tax differential" to Debtor as required by section 2 of the Escrow Agreement. The Escrow Agent currently holds the escrow funds of $50,000. Movant, Mr. Strickland, and Trustee each contend that he or she is

---

Independent Contractor Agreement, Note or Obligations. (emphasis added).

entitled to the escrow funds.

Mr. Strickland's Entitlement To The Escrow Funds

    Mr. Strickland contends that the escrow funds being held by the escrow agent are not property of Debtor's bankruptcy estate. Mr. Strickland contends that he is the intended beneficiary of the escrow funds and demands that the funds be paid to him.

    Mr. Strickland relies upon Dzikowski v. NASD Regulation, Inc.,[7] a decision by the Eleventh Circuit Court of Appeals. In that case, NASD filed a disciplinary proceeding against the debtor who was a licensed security dealer. The debtor and NASD entered into a settlement agreement which required the debtor to forward $650,000 to a temporary escrow account pending the establishment of an independent escrow agent. The escrow funds were to be distributed to customers harmed by the debtor's securities violations. The debtor's mother-in-law, at the request of the debtor's wife, forwarded $650,000 of her personal funds to the temporary escrow account. The debtor's wife subsequently repaid her mother's loan. While the escrow funds were still in the temporary escrow account, the debtor filed for bankruptcy relief. NASD contended that the escrow funds did not belong to the debtor and were not property of the bankruptcy estate. The circuit court agreed. The circuit court stated that the source of the funds was the debtor's mother-in-law rather than the debtor. The true beneficiaries of the escrow funds were the customers defrauded by

---

[7] 239 F.3d 1195 (11th Cir. 2001).

7

the debtor. The debtor did not have control over the funds in the escrow account and could not direct who would receive the funds.

In the case at bar, Mr. Strickland notes that Movant, rather than Debtor, was the source of the escrow funds. Mr. Strickland contends that he is the intended beneficiary of the escrow funds and that Debtor never had any control over the escrow funds.

Mr. Strickland also relies upon Collins v. Norton[8] in which the Georgia Court of Appeals stated that escrow removes the funds absolutely from the control of the depositor. Title to funds placed in escrow, however, remains in the depositor until all conditions of escrow are accomplished, or until the escrow is abandoned and the depositor receives the funds from the escrow agent.

In Dzikowski, "There was no written escrow agreement between [the temporary escrow account agent] and the Debtor regarding the $650,000 [escrow funds]." NASD Regulation, Inc. v. Scanlon, (In re Scanlon), 242 B.R. 533, 536-37 (Bankr. S.D. Fla. 1999) aff'd 247 B.R. 867 (S. D. Fla. 2000) aff'd 239 F.3d 1195 (11th Cir. 2001).

In the case at bar, however, the Escrow Agreement states who, and under what circumstances, was to receive the escrow funds. The Escrow Agreement was executed by Mr. Strickland as an individual, as president of C.U.A., Inc., and as

---

[8] 136 Ga. App. 105, 220 S. E. 2d 279 (1975).

president of Debtor. Thus, Mr. Strickland was aware of the terms of the Escrow Agreement.

The Escrow Agreement states that upon the completion of Mr. Strickland's and C.U.A., Inc.'s 2003 income tax returns and a calculation of the "tax differential," that the parties shall notify the escrow agent in writing of the amount due Mr. Strickland and C.U.A., Inc. for the "tax differential." Mr. Strickland and C.U.A., Inc. were to receive the entire $50,000 only if the "tax differential" equals or exceeds $50,000. Any excess funds were to be returned to Debtor. The Escrow Agreement states that any escrow funds not paid out by October 15, 2004, shall be returned to Debtor.

Mr. Strickland and C.U.A., Inc. have not completed their 2003 income tax returns. The completion of the tax returns plus a calculation of the "tax differential" was required for the escrow funds to be paid to Mr. Strickland and C.U.A., Inc. The Court can only conclude that Mr. Strickland and C.U.A., Inc. have not satisfied the requirements set forth in the Escrow Agreement and that they are not entitled to the escrow funds.

Mr. Strickland argues that he could not complete his 2003 income tax return and calculate the "tax differential" because Debtor failed to make the final payment under the Promissory Note which was due January 1, 2005. Mr. Strickland argues that Movant failed to honor his personal guarantee of Debtor's obligations. The Court is not persuaded by Mr. Strickland's argument. The final payment under the Promissory Note was not due until January 1, 2005, which was one year and one day after the end

of the 2003 tax year. Mr. Strickland's 2003 income tax return should have been completed long before Debtor's final payment was due under the Promissory Note. The Court is not persuaded that completion of Mr. Strickland's 2003 tax return was dependent upon Debtor's final payment under the Promissory Note.

Movant's Entitlement To Escrow Funds

Debtor had no funds to meet its obligation under the Escrow Agreement. Movant issued a personal check for $50,000 to the escrow agent to meet Debtor's obligation. The Escrow Agreement provides that any funds not paid out by October 15, 2004, shall be returned to Debtor. Movant contends that the escrow funds are not property of Debtor's bankruptcy estate because he is equitably subrogated to Debtor's right to return of the escrow funds.

Movant contends that some provisions in the Escrow Agreement and the other closing documents were "mistakes." For example, in his motion before the Court,[9] Movant contends:

> 17.
>
> The Escrow Agreement should have provided that any funds not paid by October 15, 2004, shall be *returned* to Dr. Ahmed [Movant], being as Dr. Ahmed [Movant] provided the funds necessary to satisfy the escrow requirement. [emphasis original].

Movant admits that he should have read the Escrow Agreement more carefully.

---

[9] Docket No. 124.

10

Movant testified that the Escrow Agreement "was brought in at the last second by Mr. Strickland."[10]

Movant is well educated and was represented by counsel. Movant testified that he signed the Escrow Agreement. After reviewing the signatures, the Court is persuaded that Movant did not sign the Escrow Agreement.[11] Movant simply did not give proper attention to the Escrow Agreement either at the closing or when he testified at the hearing on February 12, 2008. The Court is persuaded that the Escrow Agreement should be enforced as written.

Movant contends that under equitable subrogation, a party [a guarantor or surety][12] that discharges the obligation of another [the principal] is subrogated to the rights of the party primarily responsible for performing the obligation [the principal] as well as to the rights of the party to whom the obligation was owed [the creditor]. Movant contends that equitable subrogation allows the party [the guarantor]

---

[10] See Carter's Royal Dispos-All v. Caterpillar Financial Services. Inc., 271 Ga. App. 159, 609 S.E. 2d 116, 118 (2004). ("And, as a general rule, lack of time does not constitute the type of emergency that justifies failure to read a binding contract.")

[11] The Escrow Agreement does not have a "signature line" for Movant. The Escrow Agreement was executed by Mr. Strickland as an individual, as president of C.U.A, Inc., and as president of Debtor.

[12] The distinction between sureties and guarantors was abolished in 1981. O.C.G.A. § 10-7-1 (2000); Balboa Insurance Co. v. A.J. Kellos Const. Co., 247 Ga. 393, 276 S.E. 2d 599, 600 n. 3 (1981).

11

discharging the debt to stand in the shoes of either the principal or the creditor.[13] Movant relies on 4 Bruner & O'Connor On Construction Law § 12:101 (2007) ("The surety that performs under its bond and discharges the obligation of its principal is subrogated to the rights of those to whom the obligation is owed (the creditors) as well as the one primarily responsible for performing the obligation (the principal).").

See Grochal v. Ocean Technical Services Corp., (In re Baltimore Marine Industries, Inc.) 476 F.3d 238, 242 (4th Cir. 2007) ("a surety steps into the shoes of the general contractor [the principal] and thus acquires his legal title and any other rights he has to the withheld funds, legal and equitable.").

When applying equitable subrogation, bankruptcy courts look to the law of the forum state. Hamada v. Far East National Bank, (In re Hamada) 291 F.3d 645, 651 (9th Cir. 2002); Celotex Corp. v. Allstate Insurance Co., (In re Celotex Corp.) 289 B.R. 460, 468 (Bankr. M.D. Fla. 2003).

Equitable subrogation requires that a party show that (1) it paid a debt in order to protect its own interest, (2) it was not acting as a volunteer in making the payment, (3) it was not primarily liable for the debt, (4) the entire debt was paid, and (5) subrogation would not cause an injustice to the rights of third parties. Fibreboard Corp. v. Celotex Corp., (In re Celotex Corp.) 472 F.3d 1318, 1323 (11th Cir. 2006) (applying Florida law); Hamada v. Far East National Bank, (In re Hamada) 291 F.3d

---

[13] Movant's brief, p.3, Docket No. 125.

12

at 651 (applying California law); McAllister Towing v. Ambassador Factors, (In re Topgallant Lines, Inc.) 154 B.R. 368, 382 n. 14 (S.D. Ga. 1993), aff'd 20 F.3d 1175 (11th Cir. 1994) (maritime law); In re Flamingo 55, Inc., 378 B.R. 893, 911 (Bankr. D. Nev. 2007) (applying California law); Celotex Corp. v. Allstate Insurance Co., (In re Celotex Corp.) 289 B.R. at 467 (applying generic criteria for equitable suborgation); Photo Mechanical Services, Inc.v. E.I. Dupont De Nemours & Co., (In re Photo Mechanical Services, Inc.) 179 B.R. 604, 618 (Bankr. D. Minn. 1995) (citing 73 Am. Jur. 2 D, Subrogation § 11 (1974)).

"Subrogation is never applied for the benefit of a mere volunteer who pays the debt of another without any assignment or agreement for subrogation, and who is under no legal obligation to make the payment, and is not compelled to do so for the preservation of any rights or property of his own." Franco v. Cox, 265 Ga. App. 514, 594 S. E. 2d 717, 719 (2004). Subrogation requires the existence of an obligation to pay and the actual payment of the debt. Id. at 720.

The cardinal rule of construction of a contract is to ascertain the intention of the parties, and escrow agreements will be given a reasonable construction in order to carry out the manifest intentions of the parties. Giddens Construction Co. v. Fickling & Walker Co., 188 Ga. App. 558, 373 S.E. 2d 792, 794 (1988), reversed on other grounds 258 Ga. 891, 376 S.E. 2d 655 (1989).

The right to subrogation can be modified or extinguished by contract or may be waived either expressly or by implication. Waiver of the right of subrogation is a

question of intention. 83 C. J. S. Subrogation § 21 (2008). See <u>Brookside Communities, LLC v. Lake Dow North Corp.</u>, 268 Ga. App. 785, 603 S.E. 2d 31, 32-33 (2004) (guarantor unambiguously waived any claims it might have had).

In the case at bar, Movant used his personal funds to pay Debtor's obligation under the Escrow Agreement. Movant contends that he made the escrow payment under his personal guarantee of Debtor's obligations. Movant contends he made the payments as guarantor under his Unconditional Guaranty of Payment And Performance.[14] Trustee contends that Movant was not legally obligated to make the escrow payment and that Movant was a mere volunteer who is not entitled to equitable subrogation.

Movant executed an Unconditional Guaranty Of Payment And Performance dated December 19, 2003, in favor of Mr. Strickland and C.U.A., Inc. In section 1, Movant personally guaranteed Debtor's obligations under the Independent Contractor Agreement and the Promissory Note, "collectively referred to as the 'Obligations.'" Movant did not guarantee Debtor's obligation under the Escrow Agreement. In section 7, Movant irrevocably waived and released Debtor from all claims to which Movant may have by virtue of his guarantee, payment, or performance, including any right to subrogation, reimbursement, or other similar right.

The Court is not persuaded that Movant, under his Unconditional Guaranty Of

---

[14] Movant's motion, para. 14, Docket No 124; Movant's brief, pp 7, 8, Docket No. 125.

Payment And Performance, was legally obligated on or personally guaranteed Debtor's obligation under the Escrow Agreement. The Court is persuaded that Movant irrevocably waived and released Debtor from any right of subrogation.

The Court is persuaded that Movant acted as a mere volunteer when he paid the escrow funds. The Court is persuaded that Movant's motion seeking entitlement to the escrow funds held by the escrow agent must be denied.

The Escrow Agreement provides that any funds not paid out by October 15, 2004, shall be returned to Debtor. The Court is persuaded that the Chapter 7 Trustee of Debtor's bankruptcy estate is entitled to the escrow funds of $50,000 held by the escrow agent.

An order in accordance with this memorandum opinion will be entered this date.

DATED this 29th day of April 2008.

/s/ Robert F. Hershner, Jr.
ROBERT F. HERSHNER, JR.
United States Bankruptcy Judge